# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
_____X     Index No.: 525645/2024
**WILLIAM MARTIN,**
                                                    **VERIFIED COMPLAINT**
                            PLAINTIFF,

                -against-

**THE NEW YORK PUBLIC LIBRARY, ZENA GEORGE,
CHARMAINE MCFARLANE, BEN SAPADIN,
TERRANCE NEAL, AND JESSICA ROSENTHAL,**

                            DEFENDANTS.
_____X

Plaintiff WILLIAM MARTIN by his counsel Yu-Xi (Glen) Liu, Esq. respectfully alleges for the Verified Complaint against the defendants as follows:

## THE PARTIES

1. At all times relevant to this Complaint, plaintiff WILLIAM MARTIN ("WILLIAM") is a New York State resident and resides in Brookly, New York.

2. At all times relevant to this Complaint, defendant THE NEW YORK PUBLIC LIBRARY (THE "NYPL") was and is a New York State domestic corporation with a principal place of business at 476 Fifth Avenue, New York, NY 10016.

3. At all times relevant to this Complaint, defendant Zena George was and is the Assistant Director of Stavros Niarchos Foundation Library ("SNFL") which is located at 455 Fifth Avenue, New York, NY 10016.

4. At all times relevant to this Complaint, defendant Ben Sapadin was and is the Supervising Librarian of the SNFL.

5. At all times relevant to this Complaint, defendant Terrance Neal was and is Vice President, Human Resources of the Library.

6. At all times relevant to this Complaint, defendant Charmaine McFarlane was and is Senior Human Resources Business Partner of the Library.

1 | P a g e

7. At all times relevant to this Complaint, defendant Jessica Rosenthal was and is Senior Human Resources Business Partner of the Library.

## JURISDICTION and VENUE

8. The Courts of the State of New York have jurisdiction over occurrences or causes of action that arose in New York.

9. The County of Kings is the proper venue as it is where plaintiff William Martin resides.

## STATEMENT OF FACTS

10. Plaintiff William started working at the NYPL in August 2005.

11. William had been working at the SNFL in midtown from July 2006 to November 2023.

12. William has been working at the Ottendorfer Library since late last year.

13. On October 1, 2021, William first brought his concerns on health and safety about the first-floor service desk that lacks accommodations to Mr. Terrance Neal and Ms. Deborah Allman.

14. William, an African American who stands at 6'2" and weighs 60 pounds, requested a service desk with the appropriate and necessary accommodations such as sufficient leg room and even countertop.

15. Ms. Sally Speller, Williams' direct supervisor at the time, was quite empathetic to his plight and proactively intervened on his behalf.

16. When William alerted Ms. Sally Speller of the issue, she alerted her supervisor (Michelle Malone) of the issue.

17. Upon Ms. Malone's refusal to consider his request, William had to get his union involved.

18. Once Mr. Jose Alamo saw the first-floor service desk countertop and William's stature, he immediately told the NYPL to either reconfigure the countertop or reassign William; and if the NYPL did neither, then the union would file a grievance on behalf of William.

19. The solution as conveyed to William would be that either the service counter/desk on the first floor would need to be re-configured to adequately address William's health and safety

**2 | Page**

concerns or William would not be assigned to the first-floor service counter/desk.

20. As a result, his concerns were adequately addressed as he was not assigned to the first-floor service desk.

21. His workstations on the second and six floors of the SNFL did have the necessary accommodations.

22. On June 15, 2023, Zena George, Asst. Dir. of SNFL assigned William without any prior notice to the first-floor service desk that still lacks the appropriate accommodations for Wiliam.

23. On June 30, 2023, counsel emailed Asst. Dir. George, raising Williams' concerns anew on health and safety and the lack of accommodations with the first-floor service desk.

24. Instead of working to address Williams' health and safety concerns about the first-floor service desk's lack of accommodations, Asst. Dir. George failed to respond to counsel's email and continued assigning Williams to the first-floor service desk unabatedly.

25. In a direct response to counsel's email requesting accommodations and in retaliation against Williams for hiring counsel to voice his concerns, Asst. Dir. George changed the desk assignment schedule for the month of July and dramatically increased the frequency of assigning Williams to the aforementioned first-floor service desk that lacked the appropriate accommodations.

26. Thus, the SNFL apparently retaliated by forcing William to do exactly the one thing he knew detrimental to his health and safety.

27. On August 16, 2023, the SNFL further isolated and harassed William by making his own union, DC37, to wash their hands off this matter, when William was compelled by DC37 to sign a waiver on the issue of accommodations.

28. This outrageous pattern of discrimination, harassment and hostile work environment has since escalated. The frequency of forcing William to the ill-fitted first-floor service point has gone weekly in the week of July 4 to twice a week to multiple times a week. It is the SNFL's way to bully William and intimidate him, showing him "who is the boss."

29. The discrimination and harassment escalated further when Charmaine McFarlane repeatedly forced William into a "meeting" with her, knowing William would be without union rep. Ms. McFarlane had been advised by counsel that William would attend such a meeting only when

3 | P a g e

accompanied by counsel.

30. On September 28, 2023 at 2:09 p.m. despite counsel's advice, Ms. McFarlane tried to force William into a purported "meeting" without his legal counsel. She set the meeting at "**today at 3:15 pm.**" (the bold-font emphasis is original).

31. On the late afternoon of **October 11, 2023**, Ms. McFarlane was finally successful in cornering William into a meeting and summarily had him escorted out of the building only after a few minutes into the "meeting."

32. In this ambush of a meeting, Ms. McFarlane first announced her decision a few minutes into the meeting that she suspended William effective immediately and had a security guard who was already standing by escort William out of the building.

33. Ms. McFarlane's showing William "Who is the Boss" came just one short week after counsel had emailed Mr. Nicholas Reiter, an outside counsel for NYPL on October 4, 2023 about reaching an amicable solution on William's concerns.

34. On October 11, 2023 it was around 6:15 p.m. when William got called into their "meeting".

35. At the "meeting," Asst. Dir. George, who previously had not spoken to William in four months, was more than happy to speak to William all of a sudden, trying to cover up the fact that it was she and Ms. McFarlane who were forcing William into an office for their "meeting".

36. When William refused Asst. Dir. George's direction, William was immediately suspended right there and then.

37. As an HR officer, Ms. Charmaine could not orchestrate the suspension for insubordination, which is the only reason why she had Asst. Dir. George there.

38. Also present at the scene were two security supervisors who were standing right there, took direction of Asst. Dir. George and escorted William out of the building.

39. This latest attempt is particularly egregious because the SNFL knew or should have known William's counsel could not possibly make this meeting given such a short notice and counsel had been quarantined due to Covid-19.

40. It was an ambush of a meeting, where security officers were already on hand escorted

4 | P a g e

William out of the building within minutes of William showing up at the defendants' office.

41. On Monday, October 23, 2023, a kangaroo court of proceedings took place at the SNFL, where it was presided by Ms. Jessica Rosenthal and William was not given much of an opportunity to speak up and voice out his concerns and grievances.

42. At the conclusion of the proceedings, Ms. Rosenthal just found against William without deliberation in a foregone conclusion.

43. At the appeal, it was also found against William.

44. On November 22, 2023, William was granted a total of 12-week disability leave in a rolling 365-day period pursuant to the FMLA Leave and took a three-week disability leave.

45. William did not receive any disability leave pay until early August 2024, more than 9 months after taking his first leave.

46. William only received a mere $510.00, about 20% of his regular salary.

47. William put in a request for a second disability leave in late July.

48. It was summarily denied.

49. Vice President Terrance Neal had failed to investigate this matter.

50. Although William brought this issue to him originally in October 2021, VP Neal failed to keep any record.

51. The Human Resources department claims that they don't have record of William raising his concerns on health and accommodations in 2021.

52. VP Neal upheld the suspension decision of the Kangaroo proceedings without so much seeking out William and speaking to him.

53. On September 12, 2023, Supervising Librarian Ben Sapadin defamed William by falsely claiming he saw William sleeping at work.

54. On November 27, 2023, Supervising Librarian Ben Sapadin sent William when he reported back to work right after his disability leave because William came back without a doctor's note.

55. However, the very next day, when William reported back to work with his doctor's note, Supervising Librarian Sapadin told William to his face that he would not need such a note.

5 | Page

56. Supervising Librarian Sapadin's capacious and arbitrary 'bossing" Willliam around is further example of discrimination and harassment, that is emblematic of a hostile workplace.

## AS AND FOR A FIRST CAUSE OF ACTION
## DISCRIMINATION

57. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "56" of the Verified Complaint as if fully set forth herein at length.

58. WILLIAM, a minority, is a member of a protected class.

59. When he first raised his concerns about the first-floor service desk's lack of accommodation that would adversely impact on his physical health and well-being, his then immediate supervisor Ms. Sally Speller took his concerns seriously.

60. Together with the intervention of his union rep Mr. Jose Alamo, a solution was reached whereby William would not get assigned to the uneven first-floor service desk that has very little leg room for a person of William's physical attributes.

61. However, when Ms. Zena George, who became the Assistant Director of the SNFL, things immediately turn a dark turn for worse beginning June 2023.

62. Not only did Asst. Dir. George throw the solution out of the window and she saw fit to assign William to the aforementioned first-floor service desk with increasing frequency.

63. William had to use his vacation, sick and personal days to avoid being forced into manning that uneven and crampy first-floor service desk.

64. Things quickly spiraled downward for William.

65. After counsel emailed Asst Dir. Zena George on June 30, 2023 reiterating William's health and safety concerns and renewing his request for the necessary accommodation, the SNFL doubled down, changed the work schedule and assigned William to cover the first-floor service point with ever increasing frequency, in an apparent retaliation.

66. On August 16, 2023.the SNFL made William sign a union waiver.

67. Now that William was without his union representative on the issues of health and necessary accommodation, the SNFL sought repeatedly to force William into a meeting without his

6 | P a g e

NYSCEF DOC. NO. 2                                                          RECEIVED NYSCEF: 09/23/2024

Case 1:24-cv-07972-NCM-RML    Document 1-4    Filed 11/15/24    Page 8 of 14 PageID #: 20

counsel's presence.

68. On the late afternoon of October 11, 2023, the SNFL was finally successful in cornering William into a meeting and summarily had him escorted out of the building only after a few minutes into the "meeting."

69. This power play of showing William "who is the Boss" came mere days after counsel had emailed Mr. Nicholas Reiter, an outside counsel for NYPL on October 4, 2023 about reaching an amicable solution on William's concerns.

70. On Monday, October 23, 2023, a kangaroo court of a hearing took place at the SNFL, where it was presided by the management and William was not given much of an opportunity to speak up and voice out his concerns and grievances.

71. At the conclusion of the farcical proceedings, the management found against William without any surprise.

72. At the appeal, it was also found against William.

73. William could no longer take it working at the SNFL.

74. He petitioned to transfer out of the SNFL and also applied for a medical leave.

75. He had also sought psychiatrist and therapist's help for his mental health.

76. On November 22, 2023, William was granted a total of 12-week disability leave in a rolling 365-day period pursuant to the FMLA Leave and took a three-week disability leave. William did not receive any disability leave pay until August 2024, more than nine months after taking the leave, and only received a mere $510.00.

77. William's request for a second disability leave was summarily denied without any justification.

78. The defendants have discriminated against William.

79. William's mental health has been damaged to such extent that he could no longer bring himself to work at the SNFL that has dehumanized him, that he would tremble just at the thought of going back to work at the SNFL, and that he has developed anxiety and depression.

80. William is damaged thereby and prays for a judgement of $1,000,000.00 against the

7 | Page

defendants jointly and severally.

## AS AND FOR A SECOND CAUSE OF ACTION
## WORKPLAE HARASSMENT

81. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "80" of the Verified Complaint as if fully set forth herein at length.

82. As set forth in the foregoing, WILLIAM is a member of a protected class.

83. He has suffered from a pattern of discriminatory and abusive behavior by the management after he had reiterated his concerns about the first-floor service desk on his physical health and well-being.

84. The management acting in concert has created a hostile workplace environment for William by not only ignoring his pleas for appropriate accommodation but going out of their way to make William's life as miserable as possible, the point of William giving up any desire of even setting foot to work in the SFNL again.

85. The SFNL under Asst. Dir. George, et al, had become simply too toxic a workplace for William.

86. William's mental health has been damaged to such extent that he could no longer bring himself to work at the SNFL that has dehumanized him, that he would tremble just at the thought of going back to work at the SNFL, and that he has developed anxiety and depression.

87. William is damaged thereby and prays for a judgement of $1,000,000.00 against the defendants jointly and severally.

## AS AND FOR A THIRD CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

88. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "87" of the Verified Complaint as if fully set forth herein at length.

89. As set forth in the foregoing, the management acting in concert has intentionally inflicted emotional distress upon William by not only ignoring his pleas for appropriate accommodation but going out of their way to make William's life as miserable as possible, the point of William giving

**8 |** P a g e

up any desire of even setting foot to work in the SFNL again.

90. The SFNL under Asst. Dir. George, et al, had become simply too toxic a workplace for William.

91. William's mental health has been damaged to such extent that he could no longer bring himself to work at the SNFL that has dehumanized him, that he would tremble just at the thought of going back to work at the SNFL, and that he has developed anxiety and depression.

92. William is damaged thereby and prays for a judgement of $1,000,000.00 against the defendants jointly and severally.

## AS AND FOR A FOURTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

93. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "92" of the Verified Complaint as if fully set forth herein at length.

94. As set forth in the foregoing, the management acting in concert has negligenty inflicted emotional distress upon William by not only ignoring his pleas for appropriate accommodation but going out of their way to make William's life as miserable as possible, the point of William giving up any desire of even setting foot to work in the SFNL again.

95. The SFNL under Asst. Dir. George, et al, had become simply too toxic a workplace for William.

96. William's mental health has been damaged to such extent that he could no longer bring himself to work at the SNFL that has dehumanized him, that he would tremble just at the thought of going back to work at the SNFL, and that he has developed anxiety and depression.

97. William is damaged thereby and prays for a judgement of $1,000,000.00 against the defendants jointly and severally.

## AS AND FOR A FIFTH CAUSE OF ACTION
## DEFAMATION
## AGAINST DEFENDANT BEN SAPADIN

98. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "97" of the Verified Complaint as if fully set forth herein at length.

9 | P a g e

99. Defendant Ben Sapadin is the Supervising Librarian at the SNFL.

100. In November 2023, defendant Sapadin falsely accused William of sleeping while at work.

101. William confronted defendant Sapadin about this slander.

102. Defendant Sapadin could not and did not produce any verifiable evidence that William had slept at work.

103. Defendant Sapadin slandered William, making him feel disrespected, insulted and harmed.

104. William is thereby and prays for a money judgment of $100,000.00 against defendant Sapadin.

## AS AND FOR A SIXTH CAUSE OF ACTION
## INJUNCTION
## AGAINST DEFENDANT THE NEW YORK PUBLIC LIBRARY

105. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "104" of the Verified Complaint as if fully set forth herein at length.

106. In November 2023, William was granted a total of 12-week FMLA Leave in a rolling 365 day period.

107. He took a three-week leave in November.

108. In July 2024, he put in a request to take another leave.

109. Despite the approval and only 3-week leave taken, William's request was summarily denied.

110. William's request for a second leave should be granted as a matter of course.

**WHEREFORE**, Plaintiff respectfully prays for judgment against the defendants jointly and severally as follows:

a. Finding in favor of WILLIAM MARTIN against the Defendants in each of the causes of action;
b. Issuing injunction against Defendant the NYPL, enjoining them from denying William's request for a FMLA Leave.

10 | P a g e

c. Awarding WILLIAM MARTIN a money judgment as follows:

1) Special and exemplary damage of $1,000,000.00 on the cause of discrimination;

2) Special and exemplary damage of $1,000,000.00 on the cause of workplace harassment;

3) Special and exemplary damage of $1,000,000.00 on the cause of intentional infliction of emotional distress;

4) Special and exemplary damage of $1,000,000.00 on the cause of negligent infliction of emotional distress;

5) Special and exemplary damage of $100,000.00 on the cause of defamation;

6) compensatory damages of $50,000.00 for all the vacation, sick and personal days William Martin had lost;

7) reasonable attorney fees to be determined by the Court; and

8) Such other and further relief as this Court may deem just and proper.

DATED: NEW YORK, NEW YORK
SEPTEMBER 23, 2024

Respectfully

By: _/Yuxi liu/_____
YU-XI (GLEN) LIU, ESQ.
*Attorney for Plaintiff*
53 Elizabeth Street, 2C
New York, NY 10013
212.597.2888
Glen@Dawnlaw.us

11 | Page

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

_____X      Index No.: 525645/2024
**WILLIAM MARTIN,**

                           **VERIFICATION**

                PLAINTIFF,

    -against-

**THE NEW YORK PUBLIC LIBRARY, ZENA GEORGE,
CHARMAINE MCFARLANE, BEN SAPADIN,
TERRANCE NEAL, AND JESSICA ROSENTHAL,**

                DEFENDANTS.
_____X

Yu-Xi Liu, being duly sworn, deposes and says:

That he is the attorney for the Plaintiff in the within action; that he has read the within Complaint and knows the contents thereof, and that same is true to his own knowledge, except and to the matters herein stated to be alleged upon information and belief, and that as to those matters he believes it to be true.

That the source of his information and knowledge is investigation and records on file.

That the reason this verification is being made by deponent and not by the Plaintiff is that the Plaintiff is not within the county where deponent has his office.

Dated: September 23, 2024

                                        _____/s/__*Yuxi Liu*_____
                                        YU-XI (GLEN) LIU, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
_____X    Index No.: 525645/2024

**WILLIAM MARTIN**,

                        PLAINTIFF,

                -against-

**THE NEW YORK PUBLIC LIBRARY, ZENA GEORGE,
CHARMAINE MCFARLANE, BEN SAPADIN,
TERRANCE NEAL, AND JESSICA ROSENTHAL**,

                        DEFENDANTS.
_____X

# <u>VERIFIED COMPLAINT</u>

***Pursuant to 22 NYCRR 130-1.1, the undersigned,*** *an attorney duly admitted to the practice of law before the courts of the State of New York, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

Dated: September 23, 2024

                                          Signature:  /s/ *Yuxi Liu*
                                                     Yu-Xi Liu, Esq.

YU-XI LIU, ESQ.
*Attorney for Plaintiff*
53 Elizabeth Street, 2C
New York, NY 10013
212.597.2888
Glen@Dawnlaw.us
